CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr. SBN 111282
Mark Potter, SBN 166317
Sara Gunderson, SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DICTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case:** 2:17-CV-01256-MCE-CKD |
| Plaintiff, | **Plaintiff's Memorandum of Points and Authorities** |
| v. | |
| **Jeri Oishi;**<br>**Aloha Flowers, Inc.,** | Date:     January 24, 2019     Septemb<br>Time:    2:00 p.m.                 10:00 a.r<br>Ctrm:    7 (14th Floor)          1600-Six |
| Defendants. | Hon. Judge Morrison C. England, Jr. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES.......................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 1

  I.  PRELIMINARY STATEMENT ................................................... 1

  II.  RELEVANT FACTS ................................................................ 1

  III.   LEGAL STANDARD................................................................ 3

  IV.   THE LACK OF ACCESSIBLE FACILITIES ........................... 4

    A. Plaintiff is Disabled................................................ 6

    B. Defendants Own, Operate, Lease or Lease to a Place of
Public Accommodation ............................................ 6

    C. The Store Had Barriers ........................................ 7

    D. The Plaintiff Personally Encountered These Violations and
Is Being Deterred From Patronage ........................................ 11

  V.  THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL
UNDER CALIFORNIA LAW........................................... 12

  VI.   REMEDIES........................................................... 12

  VII.  CONCLUSION........................................................ 14

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

4
603 F.3d 666 (9th Cir. 2010) .................................................................. 5

5

*Celotex Corp. v. Catrett*

6
477 U.S. 317 (1986) ............................................................................... 3

7

*Chapman v. Pier 1 Imports (U.S.) Inc.*

8
631 F.3d 939 (9th Cir. 2011) .............................................................. 4, 7

9

*Cullen v. Netflix, Inc.,*

10
880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................. 11

11

*D'Lil v. Best Western Encina Lodge & Suites,*

12
538 F.3d 1031 (9th Cir. 2008) .............................................................. 12

13

*Doran v. 7-Eleven, Inc.,*

14
524 F.3d 1034 (9th Cir. 2008) .............................................................. 12

15

*Moeller v. Taco Bell Corp.*

16
816 F.Supp.2d 831 (N.D. Cal. 2011) ..................................................... 5

17

*Molski v. M.J. Cable, Inc.,*

18
481 F.3d 724 (9th Cir. 2007) ................................................................ 11

19

*Rush v. Denco Enterprises, Inc.,*

20
857 F. Supp. 2d 969 (C.D. Cal. 2012) ................................................... 7

21

**Statutes**

22
42 U.S.C. § 12102(2)(A) ......................................................................... 6

23
42 U.S.C. § 12188(a) ........................................................................... 5, 6

24
42 U.S.C. §§ 12183(a)(2) ........................................................................ 5

25
Cal. Civ. Code § 55.56(a) ...................................................................... 12

26
Cal. Civ. Code § 55.56(b) ...................................................................... 12

27
Cal. Civ. Code § 55.56(e) ...................................................................... 13

28

Plaintiff's MSJ, P&A **Case:** 2:17-CV-01256-MCE-CKD

Civ. Code § 51 (f) ...................................................................... 11

**Other Authorities**

1991 Standards § 4.1.2(5)............................................................ 8

1991 Standards § 4.1.2(5)(b) ...................................................... 8

2010 Standards § 502.2. ............................................................. 8

2010 Standards § 502.4 Advisory............................................... 9

2010 Standards 502.4 ................................................................ 9

28 C.F.R. § 36.304(b) .............................................................. 11

CBC § 1129B.4........................................................................... 8

CBC § 11B-502.2 ...................................................................... 8

CBC § 11B-502.3.3 ................................................................... 9

Department of Justice, Technical Assistance Manual on the American
   with

   Disabilities Act (BNA) §§ III-4.4100 (1991) ..................... 7

Plaintiff's MSJ, P&A                    **Case:** 2:17-CV-01256-MCE-CKD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Plaintiff, a quadriplegic, has brought this action because Defendants have failed to provide a compliant handicap parking space. Because of this lawsuit, the Defendants promptly set about to remedy those violations. While accessibility of some features has been accomplished, some barriers continue to exist.

In this motion, Plaintiff is seeking a ruling that his rights were violated under the Unruh Civil Rights Act, a statutory penalty of $8,000, and an Order requiring Defendants to make the parking and path of travel accessible, as defined by the Americans with Disabilities Act. Alternatively, the plaintiff requests the court grant partial summary judgment to the Unruh Civil Rights Act claim.

## II.  RELEVANT FACTS

Scott Johnson is quadriplegic. He cannot walk and uses a wheelchair for mobility. He also has significant manual dexterity impairments. (SUF #1). Mr. Johnson drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2). The Enchanted Florist ("Store") is located at or about 1079 Emerald Bay Rd., South Lake Tahoe, California. (SUF #3). Defendant Jeri Oishi is the Trustee of the Trust which owns the real property located at or about 1079 Emerald Bay Rd., South Lake Tahoe, California, currently and did so January, 2015, September, 2015, October, 2015 and November, 2015. (SUF #4). Defendant Aloha Flowers, Inc., currently is the owner and operator of the

1

1  Store and was so in January, 2015, September, 2015, October, 2015 and
2  November, 2015. (SUF #5).

3       On February 3, 2015 and November 5, 2015 Mr. Johnson went to
4  the Store to shop. (SUF #6). As Mr. Johnson drove into the parking lot of
5  the Store, he found that there were parking spaces provided for customers.
6  (SUF #7). One of the parking spaces had pole mounted signage indicating
7  a van accessible parking space. (SUF #8). However the van accessible
8  parking space was not accessible to Mr. Johnson. (SUF #9). The outline
9  of the accessible parking space was almost completely faded. (SUF #10).
10  Mr. Johnson did not see any access aisle adjacent to the van accessible
11  parking space; he could only see some blue and white remnants of the
12  accessible parking space on the surface. (SUF #11-12). He did not see any
13  tow away signage displayed at or near the van accessible parking space.
14  (SUF #13).

15       Mr. Johnson needs "van accessible" parking with an eight foot
16  access aisle and adequate warning lettering. If he does not have adequate
17  room to do this, he is forced over the edge of the access aisle and inside
18  the adjacent parking space. Because of this, he runs the risk of getting
19  struck by another car. (SUF #14). Because there was no compliant van
20  accessible parking, Mr. Johnson was forced to send his companion to
21  make purchases on his behalf. (SUF #15). Encountering the parking
22  barriers and subsequently being unable to safely park and exit his car to
23  go into the Enchanted Florist caused Mr. Johnson difficulty, discomfort
24  and frustration (SUF #16). Mr. Johnson returned to the Store on several
25  other occasions including on September 1, 2015 and October 2, 2015, but
26  his knowledge of the parking violations completely deterred me from even
27  attempting to patronize the store.  (SUF #17). Subsequently Defendants
28  made changes to the parking at the Store in order to improve accessibility.

Plaintiff's MSJ, P&A                    **Case:** 2:17-CV-01256-MCE-CKD

1   (SUF #18). On October 2, 2017, Plaintiff's Investigator, Tim Wegman,
2   conducted a site inspection of the Store. (SUF #19).

3      As of October 2, 2017 the Store still contained barriers. (SUF #20).
4   The van accessible parking space measured 107 inches in width and 205
5   inches in length. (SUF #21). The access aisle measured 94 inches in width.
6   (SUF #22). The accessible parking space had a running slope of 2.3%
7   gradient and cross slope of 3% gradient. (SUF #23). The access aisle had
8   a running slope of 2.3% gradient and cross slope of 3.7% gradient. (SUF
9   #24). There were still some cracks on the surface of the parking stall and
10  access aisle that had been filled with tar. (SUF #25). There was no tow
11  away signage posted at or near the van accessible parking space. (SUF
12  #26). Additionally, the path of travel to the Store has a running slope of
13  0.3% and across slope of 2.3%. (SUF #27). The ramp has a rise of 11.4%
14  in the first 15 inches and then levels to 7.7% rise. (SUF #28). Plaintiff's
15  expert Paul Bishop reviewed and confirmed the findings of Plaintiff's
16  counsel's Investigators and outlined his opinion in his report dated August
17  17, 2018. (SUF #29).

18     Mr. Johnson frequently visits the South Lake Tahoe area. He has
19  been there on scores of occasions in the past several years to shop, dine,
20  and enjoy the local area. (SUF #31). The Enchanted Florist is conveniently
21  located, and Mr. Johnson would like to have the ability to patronize it as
22  needed whenever he is in the area.  (SUF #32). Once the violations are
23  removed, Mr. Johnson will return and continue to patronize the Store
24  whenever the need arises. (SUF #33).

25

26         ### III.  LEGAL STANDARD

27     Pursuant to section 56 of the Federal Rules of Civil Procedure, a
28  party can bring a motion for summary judgment where there is no genuine

3

1   dispute as to any material fact. Motions for summary judgment are not
2   "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the
3   present case, there can be no genuine dispute over the facts of the case and
4   those facts inform the Court and the parties that it would be a waste of
5   judicial resources for this case to proceed to trial. There is no genuine issue
6   of material fact and this court should grant the plaintiff's motion.

7

8   ## IV.   THE LACK OF ACCESSIBLE FACILITIES

9        Under Title III of the Americans With Disabilities Act of 1990
10  ("ADA"), the general rule is that: "No individual shall be discriminated
11  against on the basis of a disability in the full and equal enjoyment of the
12  goods, services, facilities, privileges, advantages, or accommodations of
13  any place of public accommodation by any person who owns, leases (or
14  leases to), or operates a place of public accommodation." 42 U.S.C. §
15  12182(a). The term "discrimination" can be misleading. The ADA applies
16  not just to intentional discrimination but to thoughtlessness and
17  indifference:

18       Its passage was premised on Congress's finding that
19       discrimination against the disabled is most often the product,
         not of invidious animus, but rather of thoughtlessness and
20       indifference, of benign neglect, and of apathetic attitudes
         rather than affirmative animus. The concept of
21       "discrimination" under the ADA does not extend only to
         obviously exclusionary conduct—such as a sign stating that
22       persons with disabilities are unwelcome or an obstacle course
         leading to a Shopping Center's entrance. Rather, the ADA
23       proscribes more subtle forms of discrimination—such as
         difficult-to-navigate restrooms and hard-to-open doors—that
24       interfere with disabled individuals' "full and equal
         enjoyment" of places of public accommodation.

25

26       *[Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th
27       Cir. 2011) (internal quotes and citations removed for readability).]

28

4

1        To succeed on his Title III, ADA claim, "a plaintiff must show that:
2  (1) he is disabled within the meaning of the ADA; (2) the defendant is a
3  private entity that owns, leases, or operates a place of public
4  accommodation; and (3) the plaintiff was denied public accommodations
5  by the defendant because of his disability[1]." "The third element—whether
6  plaintiffs were denied public accommodations on the basis of disability—
7  is met if there was a violation of applicable accessibility standards[2]." This
8  is because discrimination is defined both as either a failure to ensure that
9  alterations are "readily accessible to and useable by persons with
10  disabilities" and, where there are no alterations, "a failure to remove
11  architectural barriers…in existing facilities…where such removal is
12  readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus,
13  the following is a simplified statement of the elements necessary for the
14  plaintiff to prove discrimination under this section:

15    1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
16    2. The defendants' facility must be a place of "public
17       accommodation" and, therefore, governed by Title III of the ADA
18       *Id.*;
19    3. The defendants must be responsible parties, i.e., owners,
20       operators, lessors or lessees. *Id.*;
21    4. The defendants' facility must have either undergone an alteration
22       that did not comply with the access standards or contain an easily
23       removed barrier that the defendants failed to remove. 42 U.S.C. §§
24       12183(a)(2); 12182(b)(2)(A)(iv);

25

---

26  [1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603
27  F.3d 666, 670 (9th Cir. 2010).
28  [2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011)
  *citing*, *Chapman*, 631 F.3d at 945

5.  Plaintiff must have actually encountered this non-removed and unlawful barrier. A personal encounter with one barrier at a site provides plaintiff with standing to seek injunctive relief for all barriers at the same site that are related to plaintiff's disability[3].

As discussed below, Plaintiff's civil rights were violated because the defendants failed to provide accessible facilities. Plaintiff will discuss each element, seriatim.

## A.    Plaintiff is Disabled

The plaintiff is a quadriplegic. He cannot walk and has significant manual dexterity impairments. (SUF #1). He drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2). There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given plaintiff's inability to walk, this is not a genuine issue.

## B.    Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation

The Store is a sales establishment. Sales establishments are expressly identified as places of public accommodation and are covered by Title III of the ADA. 42 U.S.C. § 12181(7)(E). As outlined above, Defendants are, and were on the dates of incident, the real property

---

[3] 42 U.S.C. § 12188(a); *Doran v. 7-11*, 506 F.3d 1191, 1202 (9th Cir. 2007).

owners, business operators, lessors and/or lessees of the Store. (SUF #4 & 5).  The Defendants, therefore, each have an obligation to comply with the antidiscrimination provisions of Title III of the Americans with Disabilities Act.

### C.      The Store Had Barriers

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access[4]." "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access[5]." These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of

---

[4] *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted).

[5] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice).

Plaintiff's MSJ, P&A                                   **Case:** 2:17-CV-01256-MCE-CKD

inches[6]." In the present case, there were several "barriers" to allowing equal access to the Store on the date of Mr. Johnson's visits.

### ***Lack of Accessible Parking***

The lack of accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5). One in every eight of those accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.[7]

Further, to qualify as a reserved accessible parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2

---

[6] *Id.*

[7] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.

1      Under the California Building Code, to properly and effectively
2  reserve a parking space for persons with disabilities, each such space must
3  be identified with a reflectorized sign permanently posted adjacent to and
4  visible from each stall or space. CBC § 1129B.4. The sign must consist of
5  the International Symbol of Accessibility (♿) in white on a blue
6  background. *Id.* An additional sign or additional language below the
7  symbol of accessibility must state, "Minimum Fine $250" to ensure that
8  the space remains available for persons with disabilities. *Id.* Another sign
9  must be posted in a conspicuous place at the entrance to the parking lot or
10  immediately adjacent to each handicap parking space, with lettering 1 inch
11  in height, that clearly and conspicuously warn that unauthorized vehicles
12  parking in the handicap parking spaces can be towed at the owner's
13  expense. *Id.*  Additionally, the words "NO PARKING" shall be painted on
14  the ground within each 8-foot… loading and unloading access aisle. This
15  notice shall be painted in white letters no less than 12 inches… high and
16  located so that it is visible to traffic enforcement officials." CBC § 11B-
17  502.3.3.

18      As outlined above, the Store did not have a single compliant
19  accessible parking space on the dates of Plaintiff's visits. The van
20  accessible parking space was faded, there was no access aisle adjacent to
21  it, and no tow away signage is posted at or near the van accessible parking
22  space. (SUF #10-13).

23      Moreover, although Defendants subsequently re-painted and re-
24  striped the van accessible parking space, it is still not fully compliant.

25      First, van parking spaces have to be a minimum of  96 inches wide
26  where the access aisle is a minimum of 96 inches. 2010 Standards § 502.2.
27  Exception; California Building Code ("CBC") § 11B-502.2 Exception.
28  Here, the van accessible parking space is 107 inches wide and 205 inches

Plaintiff's MSJ, P&A                    **Case:** 2:17-CV-01256-MCE-CKD

long, but the access aisle is only 94 inches wide. (SUF #21 & 22).

Second, under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Here, the parking space and access aisle had excessive slopes and cross slopes, even after the parking space was striped; excessive slopes are not permitted under ADA standards. (SUF #23 & 24).

Plaintiff's expert Paul Bishop, reviewed and confirmed the findings of Mr. Wegman in his report dated August 17, 2018. (SUF #29).

Because the van accessible parking space was modified, a readily achievable standard no longer applies, and the alterations were required to strictly comply with the most current standard. Defendants failed to alter the space in compliance with the 2010 Standards outlined above.

In short, the Defendants failed to remove barriers that were readily achievable to remove, and therefore, violated the Mr. Johnson's rights under the ADA.

### ***Lack of Accessible Path of Travel***

Moreover, the Ninth Circuit has held that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them[8]. Here, on October 2, 2017, when Plaintiff's investigator Mr. Wegman conducted an inspection of the Store he found the above path of travel violations as well, in addition to the parking violations. Although

---

[8] *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008).

Plaintiff's MSJ, P&A                    **Case:** 2:17-CV-01256-MCE-CKD

Mr. Johnson did not personally encounter this barrier because he was unable to park, this barrier would present an obstacle to Mr. Johnson's use of the Store when he returns.

The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of walking surfaces shall not be steeper than 1:48. 2010 Standards § 403.3; CBC § 11B-403.3. Here, the path of travel has a running slope of 0.3% and a cross slope of 2.3%. (SUF #27).

Ramps on accessible routes shall comply with 405. 2010 Standards § 405.1; CBC § 11B-405.1. The rise for any ramp run shall be 30 inches maximum. 2010 Standards § 405.6; CBC § 11B-405.6. Here, the ramp has a rise of 11.4% in the first 15 inches and then levels to a 7.7% rise. (SUF #28).

Providing and maintaining accessible path of travel is readily achievable. Even a cursory review of the Code of Federal Regulations indicates that this type of action, i.e., providing an alternate accessible path, is of the type of action that is identified as likely to be readily achievable. 28 C.F.R. § 36.304(b)(10).

In sum, the Defendants failed to remove barriers that were readily achievable to remove, and therefore, violated the Mr. Johnson's rights under the ADA.

**D.      The Plaintiff Personally Encountered These Violations and Is Being Deterred From Patronage**

As established above, the Store was not accessible to disabled persons on the date of Mr. Johnson's visits, and it is still not accessible today. Thus, not only did Mr. Johnson personally encounter the violations, but he faces the threat of continued and repeated violations.

11

## V.   THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA[9]."  "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims[10]." As discussed above under section "IV", the defendant violated the ADA. Thus, there has been a per-se violation of Unruh.

## VI.   REMEDIES

The Plaintiff seeks both injunctive relief and statutory damages. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2). Mr. Johnson has standing to seek the fix. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent[11]." "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if

---

[9] *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012).
[10] *Molski*, 481 F.3d at 731.
[11] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008).

1  it were made accessible[12]." Here, Mr. Johnson continues to visit the
2  South Lake Taho Area frequently. And, he returned to the Enchanted
3  Florist on other occasions, including September 1, 2015 and October 2,
4  2015, but his knowledge of the barriers deterred him from patronizing
5  the business. (SUF #30). The Store is conveniently located and Mr.
6  Johnson wants to patronize it as needed whenever he is in the area. (SUF
7  #31& 32). Once the violations are removed, Mr. Johnson will return and
8  continue to patronize the Store. (SUF #33).

9      Statutory damages can be recovered for a violation of the Unruh
10  Civil Rights Act "if the violation denied the plaintiff full and equal access
11  to the place of public accommodation on a particular occasion." Cal. Civ.
12  § 55.56(a). A denial of full and equal access takes place where a plaintiff
13  "personally encountered" the violation and it resulted in "difficulty,
14  discomfort or embarrassment." Cal. Civ. § 55.56(b). In the present case,
15  all these elements are met.

16      Under the Civil Code, the plaintiff is entitled to recover a statutory
17  penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been
18  defined as "each particular occasion that the plaintiff was denied full and
19  equal access . . ." Cal. Civ. Code § 55.56(e). A plaintiff can recover for
20  both actual encounters and occasions where personal knowledge of a
21  barrier deterred the plaintiff from attempting patronage. Cal. Civ. §
22  55.56(b).

23      Mr. Johnson personally encountered the access standards violations
24  on his visits on February 3, 2015 and November 5, 2015, and on other
25  multiple occasions was deterred from visiting due to his knowledge of the
26  barriers including September 1, 2015 and October 2, 2015 (SUF #30).

27
28  [12] *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

13

1  Therefore, Mr. Johnson seeks two statutory penalties: one for his personal
2  encounter with the barriers and the second for his deterrence. There are no
3  genuine issues in dispute here, and Mr. Johnson is entitled to the statutory
4  award of $8,000 under the Unruh Civil Rights Act. "The litigant need not
5  prove she suffered actual damages to recover the independent statutory
6  damages of $4,000." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th
7  Cir. 2007). Mr. Johnson seeks an award of $8,000.

8

9                        **VII.   CONCLUSION**

10          The Plaintiff respectfully requests this Court grant his motion, or in

11  the alternative, grant as to his Unruh claim.

12

13

14  Dated: December 16, 2018          CENTER FOR DISABILITY ACCESS

15

16                                    By: /s/ *Sara N. Gunderson*
17                                    Sara N. Gunderson
                                      Attorneys for Plaintiff
18

19

20

21

22

23

24

25

26

27

28

                                   14